Submitted October 29, 1998, petition for attorney fees denied; petition for costs allowed August 5, 1999

Susan LEO
and Jonah F. Hymes,
*Plaintiffs-Appellants,*
*v.*
Phil KEISLING,
Secretary of State,
and State of Oregon,
*Defendants-Respondents,*
*and*
Kevin MANNIX
and Stephen Doell,
*Intervenors.*
(CC 98C-17232; CA A103357; SC S45677)
986 P2d 562

Katherine A. McDowell, ACLU Foundation of Oregon, Portland, filed the petition for appellants.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem, filed the response for respondents.

No appearance by intervenors.

DURHAM, J.

**DURHAM, J.**

This matter is before the court on plaintiffs' petition for attorney fees and costs. Plaintiffs do not seek an award of attorney fees against intervenors. The procedural history of the case and the court's decision on the merits appear in *Leo v. Keisling*, 327 Or 556, 964 P2d 1023 (1998). We allow costs in the sum of $246.50 and deny the petition for attorney fees.

In their complaint, plaintiffs challenged the Secretary of State's determination that a proposed initiative measure qualified for placement on the ballot. Plaintiffs asserted that the Secretary of State's action violated OAR 165-014-0030, ORS 250.105, and Article IV, section 1(2)(b), of the Oregon Constitution. Plaintiffs also argued that OAR 165-014-0030 and ORS 250.105 conflicted with that provision of the Oregon Constitution and that the Secretary of State, in applying the statute and rule, had accomplished a result that the Oregon Constitution prohibits.

The circuit court entered judgment for defendants. Plaintiffs appealed. The Court of Appeals certified the appeal to this court, and this court accepted the certification. *See* ORS 19.405 (describing certification procedure).

Following the decisional method described in *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 687 P2d 785 (1984), this court determined that it could decide plaintiffs' claim on a subconstitutional level. The court held that, in qualifying the proposed initiative measure for the ballot, the Secretary of State had relied on OAR 165-014-0030, which the Secretary of State had adopted under ORS 250.105(4). The court concluded, however, that the rule violated that statute and that the Secretary of State's action in qualifying the measure was not authorized by law. Accordingly, the court reversed the judgment and remanded the case for further proceedings.

Plaintiffs now seek costs on appeal in the sum of $246.50. Defendants do not object. We award costs in that sum.

Plaintiffs also seek attorney fees in the sum of $19,918, under several statutes and the court's inherent

equitable authority to award attorney fees. *See Armatta v. Kitzhaber*, 327 Or 250, 286-89, 959 P2d 49 (1998), and *Deras v. Myers*, 272 Or 47, 65-67, 535 P2d 541 (1975) (each discussing court's equitable authority to award attorney fees to a prevailing party as part of relief). Defendants concede that plaintiffs are prevailing parties, but assert that plaintiffs are not entitled to recover attorney fees or, in the alternative, that the amount sought is excessive.

We first consider our authority to award attorney fees in this case. We understand plaintiffs to argue that ORS 246.910 authorizes an award of fees here because it incorporates the authorization to award attorney fees stated in ORS 183.497 and also incorporates the court's inherent equitable authority to award attorney fees.

We turn to the text and context of the pertinent statutes. ORS 246.910 provides, in part:

"(1)   A person adversely affected by any act or failure to act by the Secretary of State * * * under any election law, or by any order, rule, directive or instruction made by the Secretary of State * * * may appeal therefrom to the circuit court * * *.

"* * * * *

"(4)   *The remedy provided in this section is cumulative and does not exclude any other remedy* against any act or failure to act by the Secretary of State * * * under any election law or against any order, rule, directive or instruction made by the Secretary of State * * * under any election law."

(Emphasis added.) ORS 183.497 provides, in part:

"(1)   In a judicial proceeding designated under subsection (2) of this section the court:

"(a)   May, in its discretion, allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner.

"(b)   Shall allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner and determines that the state agency acted without a reasonable basis in fact or in law; but the court may withhold all or part of the attorney fees from any allowance to a petitioner

if the court finds that the agency has proved that its action was substantially justified or that special circumstances exist that make the allowance of all or part of the attorney fees unjust.

"(2) The provisions of subsection (1) of this section apply to an administrative or judicial proceeding brought by a petitioner *against a state agency, as defined in ORS 291.002*[.]"

(Emphasis added.)

■       ORS 246.910 contains no express authorization to award attorney fees in a statutory appeal proceeding. Plaintiffs base their argument on the legislature's declaration in subsection (4) that the appeal remedy is "cumulative and does not exclude any other remedy * * *." That passage means that the legislature's adoption of the appeal remedy does not prevent the court, in an action under ORS 246.910, from awarding plaintiffs other judicial remedies that other sources of law may authorize for relief against improper actions under any election law. However, in asserting that statutory authorization exists to award attorney fees, plaintiffs must point to a legislative *enactment* of that authorization. ORS 246.910(4) by itself does not meet that description.

■       For the same reason, we also reject plaintiffs' contention that ORS 246.910(4) incorporates this court's inherent equitable authority, illustrated in *Armatta* and *Deras*, to award attorney fees in certain circumstances. By making the appeal remedy cumulative and nonexclusive, ORS 246.910(4) preserves plaintiffs' opportunity to seek other remedies under other sources of law, but does not provide or incorporate those remedies, whatever they may be, as a part of the appeal remedy under ORS 246.910(4). We address below the separate question whether plaintiffs are entitled to attorney fees under *Deras* and *Armatta*.

Plaintiffs point out that, in *Crumpton v. Roberts*, 310 Or 381, 389-90, 798 P2d 1100 (1990), this court decided to apply the 60-day time limit under ORS 183.484(2) to an action challenging a decision of the Secretary of State under an election law. Plaintiffs argue that, under the reasoning in *Crumpton*, this court should import into ORS 246.910 the attorney fee authorization in ORS 183.497(1), which is a

related provision of the Administrative Procedures Act, ORS 183.310 *et seq.* (APA).

■     This court has recognized that a decision of the Secretary of State under an election law may constitute an order under the APA. *See Ellis v. Roberts*, 302 Or 6, 18, 725 P2d 886 (1986) (concluding that the Secretary of State's decision, that a proposed measure contained a single subject, was an order in other than a contested case). However, the potential applicability of the APA here does not assist plaintiffs in their effort to identify a statutory authorization for recovery of attorney fees. ORS 183.497(2) provides that the authorization to award attorney fees in ORS 183.497(1) applies only in administrative or judicial proceedings "against a state agency, as defined in ORS 291.002 * * *." ORS 291.002 provides:

> "As used in ORS 291.001 to 291.034, 291.201 to 291.222, 291.232 to 291.260, 291.307 and 291.990, unless the context requires otherwise:
>
> "* * * * *
>
> "(7)  'State agency' or 'agency' means every state officer, board, commission, department, institution, branch or agency of the state government, whose costs are paid wholly or in part from funds held in the State Treasury, except the Legislative Assembly, the courts and their officers and committees, and *except the Secretary of State* and the State Treasurer *in the performance of the duties of their constitutional offices.*"

(Emphasis added.)

■     Defendant State of Oregon is not one of the officers or governmental entities listed in ORS 291.002(7). Moreover, the Secretary of State, the only other defendant, was performing a duty of his constitutional office in determining that the proposed initiative measure here was supported by sufficient signatures and qualified for placement on the ballot. Article IV, section 1, of the Oregon Constitution, provides, in part:

> "(4)(a)  Petitions or orders for the initiative or referendum shall be filed with the Secretary of State. The Legislative Assembly shall provide by law for the manner in which

the Secretary of State shall determine whether a petition contains the required number of signatures of qualified voters. The Secretary of State shall complete the verification process within the 15-day period after the last day on which the petition may be filed * * *."

Consequently, the Secretary of State falls outside the definition of "state agency" in ORS 291.002(7). Because plaintiffs did not proceed against a state agency as defined in ORS 291.002(7), ORS 183.497(1) does not apply to plaintiffs' action.

■  From the foregoing discussion, we conclude that plaintiffs have failed to identify a statutory authorization for an award of attorney fees. However, as this court stated in *Gilbert v. Hoisting and Port. Engrs.*, 237 Or 130, 137, 384 P2d 136, *on reh'g* 390 P2d 320 (1963), "[t]he authority of a court of equity to award attorney fees is not derived solely from statute." We proceed next to consider whether, by reason of their successful litigation, plaintiffs qualify for an award of attorney fees under this court's inherent equitable authority.

■  Several decisions of this court hold that courts of equity, including this court, have inherent power to award attorney fees to a party under appropriate circumstances. *Armatta*, 327 Or at 287 (courts of equity have inherent power to award attorney fees); *Vannatta v. Keisling*, 324 Or 514, 548-49, 931 P2d 770 (1997) (recognizing court's inherent equitable power to award attorney fees, but declining to exercise that power given circumstances of the case); *Deras*, 272 Or at 66 (awarding attorney fees, under court's inherent equitable power, because the plaintiff's action protected the "interest of the public in preservation of the individual liberties guaranteed against governmental infringement of the constitution"); *Gilbert* 237 Or at 137-38 (awarding attorney fees, under court's inherent equitable authority, because the plaintiff's action vindicated interest of union members and public in internal union democracy).

The parties disagree, for a variety of reasons, about whether this is an appropriate case in which to exercise that inherent equitable authority. We address only one of defendants' contentions, because it is dispositive of plaintiffs' entitlement to recover attorney fees under that authority.

■ In their original complaint, plaintiffs challenged defendants' use of a margin of error and certain statistical sampling techniques to determine whether sufficient valid signatures supported a proposed initiative. They alleged that those actions violated OAR 165-014-0030, ORS 250.105, and Article IV, section 1(2)(b), of the Oregon Constitution. Subsequently, the parties stipulated that "[t]here is only one issue" before the court, *i.e.*, whether defendants' use of a margin of error to qualify an initiative petition for the ballot violated Article IV, section 1(2)(b), of the Oregon Constitution. The stipulation also stated: "All additional or different contentions in previously-filed pleadings or other documents are withdrawn." Consequently, the parties confined their briefing and argument to the constitutional challenge.

This court did not reach or decide the constitutional issue that the parties presented. *Leo*, 327 Or at 560. Instead, under the decisional methodology specified in *Planned Parenthood Assn.*, 297 Or at 564, the court first examined subconstitutional bases for disposition before examining the constitutional claim. As *Planned Parenthood* explained, that approach is required to avoid a premature and unnecessary determination of constitutional limits on a governmental official's authority to act when other limits on that authority in pertinent rules or statutes may resolve the underlying claim. *Id.* at 565. As noted above, this court concluded that the Secretary of State's use of the "acceptance/rejection limit" in OAR 165-014-0030 led him to conclude that the petition contained the required number of signatures, even though he could not verify that conclusion as required by ORS 250.105(4). *Leo*, 327 Or at 566. Plaintiffs prevailed on that subconstitutional rationale.

Due to the parties' stipulation, plaintiffs gave no attention in their briefing and argument to the statute and rule on which the court's ultimate disposition turned. As matters turned out, that approach needlessly sought to resolve the parties' dispute on constitutional grounds contrary to the sequential methodology that this court has established. *See Planned Parenthood.*

Defendants contend that, because plaintiffs focused exclusively on a constitutional issue that this court did not

address, "plaintiffs' work failed to contribute to the resolution of this case." We agree. The court was required to address and decide important subconstitutional issues, as required by *Planned Parenthood*, with minimal assistance from either party.

Consequently, assuming without deciding that this case involves the proper circumstances in which the court would exercise its inherent equitable authority to award fees, we would not do so here for the reason described above. In the three cases on which plaintiffs rely most heavily, *Armatta*, *Deras*, and *Gilbert*, the successful parties' legal advocacy meaningfully contributed to the court's ultimate decision in their favor. We cannot reach the same conclusion here. In these circumstances, we conclude that it would not be equitable, despite plaintiffs' ultimate success, to shift all or part of the cost of plaintiffs' representation to defendants. Accordingly, the court denies plaintiffs' petition for attorney fees.

The petition for attorney fees is denied. The petition for costs is allowed in the amount of $246.50.