On petitions for attorney fees and for costs and disbursements filed November 12, 2019, considered and under advisement on April 14; attorney fees and costs awarded December 10, 2020

## FRIENDS OF THE COLUMBIA GORGE,
Northwest Environmental Defense Center,
Oregon Natural Desert Association,
Oregon Wild,
Hood River Valley Residents Committee,
Columbia Riverkeeper,
Wildlands Defense,
Greater Hells Canyon Council, and
Oregon Coast Alliance,
*Petitioners,*

*v.*

## ENERGY FACILITY SITING COUNCIL
and Oregon Department of Energy,
*Respondents.*

(EFSC 52017) (SC S065478)

477 P3d 1191

Petitioners previously challenged rules adopted by Energy Facility Siting Council. Petitioners prevailed on two of the five challenges that they had raised: one procedural challenge and one substantive challenge. As a result of those successful challenges, this court invalidated the council's rules. Petitioners, as the prevailing party in an administrative rules challenge, sought $541 in costs and $299,325.64 in attorney fees. *Held*: (1) Petitioners are entitled to mandatory attorney fees for work asserting their substantive challenge to the council's rules because, in adopting those challenged rules, the council "acted without a reasonable basis in fact or law," ORS 183.497(1)(b); (2) petitioners were not entitled to either mandatory or discretionary fees for work asserting their successful procedural challenge to the council's rules, because the council asserted a reasonable argument and undertook its public participation obligations in good faith; (3) petitioners' fees should be limited to their fee-generating claim because that claim is sufficiently discrete and distinct from petitioners' other claims; and (4) the court awarded petitioners the prevailing markets rate for the value of their attorneys' time, including their in-house counsel.

Attorney fees and costs awarded.

En Banc

Gary K. Kahn, Reeves, Kahn, Hennessy & Elkins, Portland, submitted the petition for attorney fees and the reply to the objection to petition for attorney fees for

petitioners. Also on the filings were Nathan J. Baker and Steven D. McCoy, Friends of the Columbia Gorge, Portland, and Peter M. Lacy, Oregon Natural Desert Association, Portland.

Nathan J. Baker, Friends of the Columbia Gorge, Portland, submitted the petition for costs and disbursements and the reply to the objection to the petition for costs and disbursements for petitioners.

Denise G. Fjordbeck, Assistant Attorney General, Salem, submitted an objection to the petition for attorney fees and an objection to the petition for cost and disbursements for respondents. Also on the filings were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

BALMER, J.

Nakamoto, J., filed a dissenting opinion, in which Nelson, J., joined.

Attorney fees and costs awarded.

**BALMER, J.**

This is an attorney fee dispute arising out of an administrative rules challenge. Petitioners successfully challenged rules adopted by the Energy Facility Siting Council that amended the process for reviewing requests for amendment (RFAs) to site certificates. *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 365 Or 371, 446 P3d 53 (2019). Petitioners now seek $299,325.64 in attorney fees under ORS 183.497. The council asks the court to award no fees. For the reasons explained below, we award petitioners $31,633 in attorney fees.[1]

## I.   BACKGROUND

Petitioners challenged the council's rules on three procedural grounds and two substantive grounds. The court rejected two of the procedural challenges that petitioners raised, which addressed whether the council had to respond to certain comments and whether the council had adequately circulated copies of the proposed rules. 365 Or at 378-87. The court, however, agreed with petitioners' third procedural challenge, concluding that the council had not substantially complied with ORS 183.335(3)(d) when it failed to state how it would determine whether the rules were accomplishing the council's rulemaking objectives. *Id.* at 387-90. Because, in adopting the rules, the council had failed to substantially comply with a procedural requirement in ORS 183.335, the court held that all the rules were invalid. *Id.* at 390.

To provide appropriate direction to the parties for any future rulemaking, the court then addressed petitioners' two substantive objections. First, the court rejected petitioners' claim that the council had exceeded its statutory authority by permitting its staff to determine, with respect to RFAs, whether there would be a public hearing and whether the public could request a contested case proceeding. *Id.* at 390-94. Second, the court agreed with petitioners that the council had adopted rules improperly limiting judicial review of RFAs that were not subject to contested case proceedings. *Id.* at 394-95.

---

[1] The court also awards petitioners $541 in costs, which are undisputed.

Thus, petitioners prevailed on two of the five challenges that they raised: one procedural challenge (failing to state how the council would determine whether the rules accomplished the its rulemaking objectives) and one substantive challenge (limiting judicial review). Based on petitioners' successful challenges, the court invalidated the rules.

## II.  ANALYSIS

A petitioner who successfully challenges the validity of an administrative rule, as petitioners have done in this case, may obtain mandatory or discretionary reasonable attorney fees under ORS 183.497(1). Petitioners argue that they are entitled to mandatory fees and, in the alternative, to discretionary fees. The council contests both arguments.

### A.  *Mandatory Fees*

Mandatory fees are available if "the state agency acted without a reasonable basis in fact or in law." ORS 183.497(1)(b). That provision is subject to an exception, however, allowing the court to deny fees if it "finds that the state agency has proved that its action was substantially justified or that special circumstances exist that make the allowance of all or part of the attorney fees unjust." *Id.* Petitioners contend that, as to the two issues on which it prevailed, the council took positions without a reasonable basis in law. The council disagrees, noting that, although it lost on two issues in this court, not every losing position taken by an agency is an unreasonable one. *See 1000 Friends v. LCDC*, 293 Or 440, 443, 649 P2d 592 (1982) ("The use of the word 'reasonable' reflects a legislative recognition that agencies, like others, can make reasonable mistakes of law."). The council maintains that the positions that it took with respect to the two issues on which it lost were reasonable, even if unavailing.

We agree with the council that its position on the procedural issue was reasonable. As noted above, this court held that the council failed to substantially comply with ORS 183.335(3)(d), which, under certain circumstances, requires an agency to provide "a statement of how the agency will

subsequently determine whether the rule is in fact accomplishing [its] objective."

The council did not dispute that it was required to provide such a statement. Instead, the council maintained that it substantially complied with that requirement because, at a rulemaking hearing, council members discussed potential options for tracking whether the rules were accomplishing their objectives. For example, council members asked staff how they might track whether the new amendment processes were serving their intended purpose of enhancing efficiency and public participation. Staff informed the council that it would be able to observe how staff is handling requests for amendment as they are processed and that, after some time, staff could gather input from those affected by the rules and report that input to the council. *Friends of Columbia Gorge*, 365 Or at 388.

The council contended that, although it never took the next step of affirming the staff's proposal, those discussions at the hearing were sufficient to substantially comply with the statute. The council based that contention on the fact that the staff suggestions were the most obvious way to track the success of the rules, that no participants, including petitioners, offered (nor did the council seek) other ways of assessing the new rules, and that those two facts combine to impliedly suggest the council's intentions, which amounts to substantial compliance. This court rejected that argument, but that was not an unreasonable position for the council to advance, particularly in the absence of any prior appellate court decision on the scope of ORS 183.335(3)(d) and given the "substantial compliance" standard that applies to that provision. As a result, petitioners are not entitled to mandatory fees based on the council's failure to substantially comply with ORS 183.335(3)(d).

With regard to the second issue—the council's rules that improperly limited judicial review of amendment orders—we agree with petitioners and conclude that the council acted without a reasonable basis in law. The challenged rules had stated that, as to orders on RFAs that did not go through contested case proceedings, the right to seek judicial review was limited to those who provided comments

during the council's consideration of an application and only as to issues on which they provided comment. *Friends of Columbia Gorge*, 365 Or at 394.

The council offered no statutory basis for its authority to limit judicial review in that way. Although the challenged rules applied to the review of orders that *had not* gone through contested case proceedings, the council relied only on ORS 469.403(2), a statute that similarly limited review of orders that *had* gone through contested case proceedings. The council maintained that contested cases are usually more complicated than noncontested cases. So, according to the council, it would not make sense to limit the availability of review in complicated contested cases, but not also limit the availability of review in less complicated noncontested cases. The council, therefore, relied on the statute limiting the availability of review for contested cases to similarly limit the availability of review for noncontested cases.

Regardless of what makes sense to the council or what it thinks would be more reasonable, it is not possible to read the statute that way. The statutory provision that the council relied on expressly applies to "contested case proceedings" and does not address noncontested case proceedings. No specific statutory provision expressly addresses who may seek judicial review of noncontested case proceedings involving an RFA. As a result, the judicial review of noncontested case proceedings involving RFAs is governed by the catchall provision, ORS 469.403(6), which provides that, unless otherwise indicated, "the review by the Supreme Court shall be the same as the review by the Court of Appeals described in ORS 183.482." And ORS 183.482 allows judicial review to be sought by, among others, "a person adversely affected or aggrieved by the agency order." ORS 183.482(2). That statutory text is not susceptible to an interpretation that could justify the council's rules limiting the availability of judicial review beyond that. As we noted in our initial decision, the council's position lacked any "grounding in the statutory text, context, or legislative history[.]" *Friends of Columbia Gorge*, 365 Or at 395. We therefore conclude that the council's position had no reasonable basis in the law and, as a

result, hold that petitioners are entitled to mandatory attorney fees based on that substantive objection.[2]

## B.  *Discretionary Fees*

Although petitioners are not entitled to mandatory fees based on their successful procedural objection, petitioners alternatively contend that the court should award discretionary fees based on that objection. Under 183.497(1)(a), "[T]he court *** [m]ay, in its discretion, allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner." The court assesses whether to award discretionary attorney fees, authorized by statute, by applying the nonexclusive factors set out in ORS 20.075(1).[3] The

---

[2] As noted above, there is an exception to mandatory fees. Even if the council took an unreasonable position that would otherwise justify mandatory fees, the court may decline to award such fees if the agency proves "that its action was substantially justified or that special circumstances exist that make the allowance of all or part of the attorney fees unjust." ORS 183.497(1)(b). Although the council asserts that such "special circumstances exist" in this case, it does not identify what those circumstances are and presents no argument for why those circumstances should qualify as "special circumstances," for the purpose of interpreting ORS 183.497(1)(b). *See, e.g.*, *Johnson v. Employment Division*, 64 Or App 276, 286, 668 P2d 416, *rev den*, 296 Or 120 (1983) ("[T]he category 'special circumstances' defies further definition until concrete fact situations arise. The legislative history does not further define it. We suggest—but do not hold—that one such special circumstance could be the fact that, if awarded, the full fee would absorb a large part of an agency's budget. We have already indicated that, where it appears from the record before us that the agency's action was substantially justified, we shall award little or no fee. Indeed, there comes a point when the petitioner's victory is so small that he cannot even be said to prevail. This, too, may have been viewed as a 'special' circumstance."). We, therefore, reject the council's effort to rely on that exception.

[3] ORS 20.075(1) provides:

"A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

statute itself simply lists the factors; it does not tell a court which factors may be more or less important in a particular case or how much weight to assign to the relevant factors. The salience of various factors and the weight to be given them will vary from case to case, and making those determinations is part of the "discretion" that must be exercised by the court that is tasked with "decid[ing] whether to award attorney fees." ORS 20.075(1).

In applying those statutory factors to determine whether to award attorney fees against an agency under ORS 183.497(1)(a), the reasonableness of the agency's claims and defenses is central. Not only is "reasonableness" its own statutory factor, ORS 20.075(1)(b), it also informs at least two other statutory factors: whether awarding fees will deter asserting good faith claims and defenses (ORS 20.075(1)(c)), and whether awarding fees will deter asserting meritless claims and defenses (ORS 20.075(1)(d)).[4] Awarding attorney fees against an agency that has asserted a reasonable claim or defense "could easily make administrative agencies timorous about pursuing reasonable positions as to what the law is or ought to be," which would not serve the public interest. *McKean-Coffman v. Employment Div.*, 314 Or 645, 650, 842 P2d 380 (1992); *see also Necanicum Investment Co. v. Employment Dept.*, 345 Or 518, 523, 200 P3d 129 (2008) (explaining that, although *McKean-Coffman* predates ORS 20.075(1), the "key consideration" of that decision now appears in ORS 20.075(1)). Nevertheless, awarding fees where an agency has taken an unreasonable and meritless position could advance one of the statutory purposes of the fee-shifting statute, which is to deter agencies from taking such positions. *See Van Gordon v. Ore. State Bd. of Dental Examiners*, 63 Or App 561, 565-66, 666 P2d 276

---

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h) Such other factors as the court may consider appropriate under the circumstances of the case."

[4] And, of course, the "objective reasonableness" of the parties and their attorneys during the proceeding and in pursuing settlement are explicitly recognized as factors in determining whether fees should be awarded. ORS 20.075 (1)(e)-(f).

(1983) (so stating). As described above, the council asserted a reasonable defense to petitioners' claim that it failed to state how it would determine whether the rules accomplished the council's rulemaking objectives. The reasonableness of the council's defense weighs heavily against awarding fees.

The statutory factors in ORS 20.075(1) go beyond the reasonableness of the agency's claims and defenses. *See Necanicum Investment Co.*, 345 Or at 523 ("Other factors are listed as well, so that *McKean-Coffman* is now explicitly augmented by the statute."). The most relevant remaining statutory factor is the conduct of the parties giving rise to the litigation. ORS 20.075(1)(a).[5] As to that factor, we also find no support for a fee award. Leading up to the adoption of the rules, the council undertook its public participation obligations in good faith. "[Between January and October 2017], the council issued six public notices about the rulemaking process, extended the comment period four times, held three public hearings, circulated three draft versions of the proposed rules, and considered more than 150 written comments." *Friends of Columbia Gorge*, 365 Or at 374. Further, at the public hearing during which the council discussed how it might determine whether the rules accomplished the council's rulemaking objectives, petitioners did not object that the council's discussion was inadequate to substantially comply with ORS 183.335(3)(d) nor did it make any suggestions as to how the council should evaluate whether the rules were meeting those objectives. Under those circumstances, we decline to exercise our discretion to award attorney fees based on the council's failure to substantially comply with a procedural requirement in ORS 183.335(3)(d).

C.   *Reasonableness of the Fee Award*

Having concluded that petitioners are entitled to attorney fees for successfully challenging the council's rules limiting judicial review, we must determine what a reasonable amount of attorney fees is. *See* ORS 183.497(1)(b)

---

[5] The other remaining statutory factors do not weigh for or against either party.

(allowing "reasonable attorney fees"). In determining a reasonable amount of fees to award "in any case in which an award of attorney fees is authorized or required by statute," ORS 20.075(2) requires the court to "consider the factors in subsection (1) of this section"—the factors used to determine whether to award discretionary fees in the first place—as well as other statutory factors contained in subsection (2).[6] Those factors are frequently captured by the "lodestar" approach, under which a fee award is "based on a reasonable hourly rate, multiplied by a reasonable number of hours devoted to work on the case, with certain adjustments potentially made to that amount for factors such as the risk of loss and the quality of the attorney's work." *Strawn v. Farmers Ins. Co.*, 353 Or 210, 217, 297 P3d 439 (2013). What constitutes reasonable attorney fees is within the sound discretion of the court ordering the fee award. *See* ORS 20.075(3) (providing that "the decision of the court as to the amount of the award" is reviewed for "abuse of discretion").

Petitioners are seeking $299,325.64 for 660.75 hours of attorney time and 33.9 hours of paralegal time, with attorney rates ranging from $325 to $550 per hour. That total represents petitioners' work on the challenge in this court, including work on all of petitioners' claims as well as work done preparing its fee petition. The council challenges both the time that may be compensated and the rates sought by petitioners.

---

[6] The factors set out in ORS 20.075(2) are:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or the circumstances of the case.

"(f) The nature and length of the attorney's professional relationship with the client.

"(g) The experience, reputation and ability of the attorney performing the services.

"(h) Whether the fee of the attorney is fixed or contingent."

### 1. *Time*

The council first objects to the time for which petitioners may receive compensation. As noted above, petitioners are seeking compensation for all the work devoted to the preparation, briefing, and argument challenging the rules in this court. The council maintains that petitioners are entitled only to fees for time devoted to the claim upon which this court is awarding fees—namely, fees for work on petitioners' claim challenging the council's rules on judicial review. In response, petitioners point out that a prevailing party is not necessarily limited to fees for work on only fee-generating claims. A prevailing party may be awarded fees on non-fee-generating claims that are sufficiently related to a fee-generating claim. *See, e.g.*, *Moro v. State of Oregon*, 360 Or 467, 487, 384 P3d 504 (2016) ("[W]hen the successful and unsuccessful claims involve a common core of facts or are based on related legal theories, then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success." (Internal citation and quotation marks omitted.)).

In this case, as an exercise of discretion, we agree with the council that petitioners' fee-generating claim—that is, the claim challenging the council's rules on judicial review—is sufficiently discrete and distinct from petitioners' other claims that petitioners' fees should be limited to that claim. Petitioners' claim challenging the council's rules on judicial review sought the invalidation of only those rules and did not rest on a legal theory that was related to petitioners' other claims. The only point of commonality between petitioners' claim on judicial review and petitioners' other claims is that all the claims arose out of the same rulemaking proceeding. But that commonality reflects only the procedural posture of the claims, which we have found insufficient in other circumstances to justify an award of fees for work on non-fee-generating claims. *See id.* at 487-88 (denying fees for non-fee-generating claims challenging the same legislation as fee-generating claims).

As a result, petitioners are entitled to fees for work reasonably necessary to challenge the council's rules on judicial review but not for the work on other claims. Petitioners

additionally are entitled to a reasonable amount for preparing their fee petition. *See TriMet v. Aizawa*, 362 Or 1, 3, 403 P3d 753 (2017) ("[A] party entitled to recover attorney fees incurred in litigating the merits of a fee-generating claim also may receive attorney fees incurred in determining the amount of the resulting fee award.").

    2.   *Rates*

Petitioners seek attorney fees based on the prevailing market rates for the services provided and the experience, reputation, and ability of petitioners' counsel. According to petitioners, the prevailing market rate—that is, the hourly rate that the attorneys could earn for their work—represents the "reasonable attorney fees" to which they are entitled. ORS 183.497(1)(b). That method for calculating attorney fees is frequently referred to as the "market-value approach."

The council does not dispute that the rates sought reflect the prevailing market rates. Instead, the council notes that four of the seven attorneys who worked on this case are in-house staff attorneys for petitioners. The council asserts that awarding market rates for those attorneys could provide petitioners with more money than the costs that they actually incurred in this litigation. Based on that fact, the council asserts that petitioners should be awarded only their actual costs for those attorneys, such as salary and benefits, plus a proportion of overhead. That method for calculating attorney fees is frequently referred to as the "cost-plus approach."

In its briefing to this court, the council fails to fully develop its position, cite any legal authority, or argue for why the costs incurred by petitioners in this litigation must limit the amount that petitioners may recover as "reasonable attorney fees." ORS 183.497(1)(b). The reasons for using the cost-plus approach are not obvious. After all, the costs incurred by the prevailing party is not one of the statutory factors that courts must consider in calculating attorney fees. ORS 20.075(1)-(2). In contrast, the statutory factors that a court must consider include factors used to determine the market rate for an attorney's services, such as "[t]he fee customarily charged in the locality for similar legal

services," ORS 20.075(2)(c), and "[t]he experience, reputation and ability of the attorney performing the services," ORS 20.075(2)(g).[7] Although the council does not say so expressly, we understand the council to argue that the court should consider petitioner's actual costs under ORS 20.075(1)(h), which provides the court with the discretion to consider "[s]uch other factors as the court may consider appropriate under the circumstances of the case."

The council appears concerned that awarding petitioners fees that are based on the market value of their attorneys could result in a windfall for petitioners. Conversely, however, awarding fees at less than the market rate could result in a windfall for the council. *See Serrano v. Unruh*, 32 Cal 3d 621, 642, 652 P2d 985 (1982) (so stating). In-house counsel for nonprofit public interest organizations, like petitioners, often accept less than the market value for their services because they support the organization's mission. In doing so, the in-house counsel are, in effect, donating a portion of their services to the organization. Reducing the council's attorney-fee liability based on that fact would transfer that donation to the council and away from the intended organization. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 76 F3d 114, 117 (7th Cir 1996) ("[T]he value of that gift belongs to the [employer].").

Such a windfall for the council in this case would be inconsistent with the purpose of the fee-shifting statute, which is not only to "redress individuals who have borne unfair financial burdens defending against groundless charges or otherwise attempting to right mistakes that agencies should never have committed," but also to "serve as [a] deterrent[] to groundless or arbitrary agency action." *Van Gordon*, 63 Or App at 565-66; *see also Brown v. Adult and Family Services*, 293 Or 6, 11, 643 P2d 1266 (1982) (recognizing that, in granting courts the authority to award attorney fees in actions that successfully contest agency actions, the legislature "intended the authority to serve as a deterrent to agency error").

---

[7] Because parties often hire attorneys at normal market rates, the costs incurred by parties are frequently evidence of the market value for those legal services.

Further, the council fails to grapple with the difficulty of accurately assessing the cost of employing in-house counsel as it relates to this case. The council suggests that it simply requires looking at the overall cost of employing the in-house counsel and then dividing that by the time the in-house counsel spent working on this matter. But the cost-benefit analysis is not so simple when an employer decides to hire a permanent salaried in-house counsel. Although the employer might determine that, over the long term, the benefit of the in-house counsel will exceed the costs, in-house counsel are likely to perform a variety of tasks on a variety of matters that an employer will value at different rates. Dividing the costs across each task evenly might result in overpaying for some tasks and underpaying for others. As a result, it is not easy to determine the per hour cost of an attorney on a particular matter when the attorney does not charge his or her client per hour or per matter.

In awarding attorney fees for salaried in-house attorneys, the "modern trend" has been to use the market-value approach. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F2d 553, 558 (9th Cir 1985); *see AMX Enterprises, L.L.P. v. Master Realty Corp.*, 283 SW3d 506, 518 (Tex App 2009) (adopting the market-value approach and collecting cases); *see also Blum v. Stenson*, 465 US 886, 104 S Ct 1541, 79 L Ed 2d 891 (1984) (allowing a litigant represented by a nonprofit legal organization to recover fees using the market-value approach, even if that rate exceeded the salaries and expenses of the organization's attorneys).

Courts adopting the cost-plus approach have frequently done so in cases in which the attorney-fee award was limited by statute to costs "incurred" by the prevailing party and have emphasized that the purpose of such an attorney-fee award is to indemnify the prevailing party. *See, e.g.*, *Softsolutions, Inc. v. Brigham Young Univ.*, 1 P3d 1095, 1107 (Utah 2000); *see also Lacer v. Navajo Cty.*, 141 Ariz 392, 396, 687 P2d 400, 404 (Ct App 1984) (applying the cost-plus approach under a statute requiring that the amount awarded "'not exceed the amount paid or agreed to be paid'" (quoting ARS § 12-341.01(B))). Neither limitation applies in this case.

But, even when an attorney-fee provision is limited to the costs incurred, some courts still have used the market-value approach in assessing the fees for salaried in-house attorneys: "[T]he market value approach has the virtue of being predictable for the parties and easy to administer. By contrast, the cost-plus approach, in addition to being cumbersome, intrusive, and costly to apply, may distort the incentives for settlement and reward inefficiency." *PLCM Grp. v. Drexler*, 22 Cal 4th 1084, 1097, 997 P2d 511, 520, *as modified* (June 2, 2000). Courts additionally have noted that, when done properly, the cost-plus approach is likely to result in an amount that is similar to the market-value approach. *See Cent. States, Se. & Sw. Areas Pension Fund*, 76 F3d at 116 ("Opportunity cost, rather than cash outlay, is the right way to value legal services. The going rate for comparable legal services in the market reveals that cost directly, avoiding a complex inquiry that is in the end likely to produce a comparable figure." (Internal citations omitted.)); *see also* ORS 20.075(2)(b) (court determining a reasonable attorney fee is to consider "[t]he likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases").

This court has never addressed the question of how to assess statutory attorney fees for in-house counsel. In other contexts, the court has taken different approaches to weighing the relevance of the costs incurred by the prevailing party. For example, in the context of a contractual attorney-fee provision, this court stated that a prevailing party "is not entitled to more than it spent on attorney fees." *Associated Oregon Veterans v. DVA*, 308 Or 476, 481, 782 P2d 418 (1989). But, later, this court affirmed a contractual attorney-fee award where the prevailing party incurred no costs at all because the attorney was provided by a third party. *Domingo v. Anderson*, 325 Or 385, 389, 938 P2d 206 (1997); *id.* at 390 n 7 (citing with approval numerous Court of Appeals decisions awarding attorney fees for *pro bono* representation). In *Domingo*, the court emphasized that the contract authorizing the attorney-fee award did "not contain any condition or qualification" limiting the reasonable attorney-fee award to the costs incurred by the prevailing party. *Id.* at 389.

More recently, in *Colby v. Gunson*, 349 Or 1, 238 P3d 374 (2010), this court affirmed a statutory attorney-fee award to an attorney who represented himself, noting that the statutory provision included "no requirement that the prevailing party, or anyone else, be obligated to pay for the legal services rendered in the suit." *Id.* at 6. As this court explained, "[T]he term 'attorney fees,' as used in the context of attorney fee awards, means the reasonable value of services performed by an attorney, whether or not anyone incurs an obligation to pay for those services." *Id.* Attorney-fee awards that exceed the costs incurred by the prevailing parties have also been justified as restitution under the substantial-benefit and common-fund doctrines. *See Moro*, 360 Or at 484, 492 (using a market rate for an attorney's services, rather than the rate that the attorney charged the prevailing party, which received a substantial discount as a long-term client, and enhancing the award with a fee multiplier to account for a contingency-fee arrangement). Although the substantial-benefit and common-fund doctrines can present different policy considerations than those that arise when applying fee-shifting statutes, as in this case, or contract provisions, awards under those doctrines are similarly "limited to a reasonable fee." *Id.* at 483 (so stating); *see also Strawn*, 353 Or at 217 ("For an attorney fee awarded either pursuant to a fee-shifting statute or the common-fund doctrine, the touchstone for the amount of the award is the same—reasonableness.").

We need not decide whether the market-value approach always is appropriate or whether the cost-plus approach is never appropriate for assessing statutory attorney fees for in-house counsel. As noted above, in the context of a statutory fee award, what counts as "reasonable attorney fees" is an exercise of judicial discretion based on the statutory factors in ORS 20.075(1) to (2). As an exercise of discretion in this case, we conclude that the market-value approach is appropriate for assessing the fees of petitioners' in-house counsel.

3. *Application*

Having concluded that petitioners may receive an award at market rates for only their counsel's work on

one claim and the fee petition, we must calculate petitioners' fee award. Petitioners' fee petition, however, makes that task difficult. Although petitioners have filed extensive records demonstrating the work that their attorneys have performed, those records generally fail to identify the claim on which the attorney was working. Of all the entries describing the work performed by petitioners' counsel, which total 660.75 hours, the entries expressly identifying work on the judicial review claim total only 8.5 hours, representing $4,428.00. That work was performed by Nathan Baker and Peter Broderick. Petitioners bear "the burden of establishing the reasonableness of the fee amount" that they seek to recover. *Strawn*, 353 Or at 225. It could be argued that the award should be limited to the 8.5 hours on this issue that are identified in their records. However, Baker's declaration reflects the fact that petitioners' lead attorney, Gary Kahn, reviewed and edited the briefing on that claim. There were certainly other tasks not specifically identified as related to the judicial review claim that contributed to the briefing and presentation of that claim, such as compilation and review of the record, briefing on the background and procedural history, research on the Siting Act, and preparation for, and presentation of, oral argument. In our view, it is reasonable to allow fees for some of that time, even though the records submitted by petitioners do not, on their face, tie that work to the judicial review claim.

In the end, the most relevant statutory factor here in resolving the parties' dispute is "[t]he time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services." ORS 20.075(2)(a). The judicial review claim was a small, discrete part of this case that did not require extensive time and effort to present to this court. The judicial review claim was relatively simple compared to petitioners' other claims. In fact, as described above, we are awarding petitioners attorney fees on that claim because the council's rule limiting the availability of judicial review was without a reasonable basis in law. Petitioners were not required to—and, as their filing indicates, did not—devote substantial hours to establishing

that the council exceeded its statutory authority when it adopted the rule that limited the availability of judicial review in a way that was inconsistent with the applicable statute. If this case had been only about the judicial review claim, it would not have justified the use of seven attorneys, the hundreds of hours of research and briefing, or the extensive oral argument preparation. The work needed to prepare a fee petition would have been similarly limited.

Nevertheless, it does require attorney time and effort to defeat even meritless arguments, like the council's argument on this issue. Having carefully reviewed petitioners' filing, and based on other fee petitions recently filed in this court and our experience with appellate briefing and argument as judges and lawyers, we conclude that it is reasonable to compensate petitioners for 70 hours of work for briefing the claim on judicial review and preparing a fee petition for work on that claim.[8] We divide that time between attorneys Kahn, Baker, and Broderick. Based on their overall contributions to the presentation of this case, we allocate 10.5 hours to Kahn, 48.3 hours to Baker, and 11.2 hours to Broderick. The reasonable rates for those attorneys are $550 per hour for Kahn, $460 per hour for Baker, and $325 per hour for Broderick.[9] That results in an award of $5,775 for work performed by Kahn, $22,218 for work performed by Baker, and $3,640 for work performed by Broderick. In total, petitioners are entitled to an attorney fee award of $31,633.

Attorney fees and costs awarded.

---

[8] The dissent characterizes this result as "ad hoc." 367 Or at 277 (Nakamoto, J., dissenting). Although our determination rests on a judgment about what is reasonable in this particular case, it is not ad hoc. The statute directs courts to make reasonableness determinations, ORS 183.497(1), and, in doing so, to consider the "time and labor required" for a party to present its case, ORS 20.075(1)(a). That is what we have done. In reaching a different result, the dissent similarly—and appropriately—relies on its own judgment about the time and labor reasonably required for petitioners to present their claim. Our disagreement is not about methodology. It is instead merely a disagreement about what is reasonable in this case.

[9] Baker and Broderick are each in-house counsel for one of the petitioners and are entitled to market rates for their work, as explained above. Kahn is outside counsel. The council did not object to the rates sought for work performed by Kahn.

**NAKAMOTO, J.,** dissenting.

Nine organizations working on land use and environmental protection issues in Oregon[1] successfully challenged administrative rulemaking by respondent the Energy Facility Siting Council, a state agency. *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 365 Or 371, 446 P3d 53 (2019). Now, the court has awarded 10.5 percent of the attorney fees that petitioners requested. The majority explains that the undersized amount is for work on one of petitioners' winning arguments: that the council lacked authority to adopt rules purporting to limit the scope of judicial review of requests for amendment to site certificates (RFAs) that were not subject to contested case proceedings. Then, based on "other fee petitions recently filed" and "experience with appellate briefing and argument as judges and lawyers," the majority awards fees for 70 hours of work in this appeal. 367 Or at 275. I respectfully dissent.

First, I disagree with the majority's refusal to award fees for petitioners' work on their second winning argument, which resulted in an invalidation of the council's new rules. The winning argument was that, pursuant to ORS 183.335(3)(d), the council was required, but failed, to prepare a written statement identifying the objectives of the council's rules and how the council would determine whether its rules were accomplishing those objectives. The court should have awarded attorney fees to petitioners for that work, either because the award was mandated or as a matter of discretion, as provided in the statute for awarding fees and costs when a court finds in favor of a petitioner in defined administrative or judicial proceedings brought against a state agency.

Second, even if the majority has correctly determined that petitioners should be awarded fees based only on their successful argument relating to the scope of judicial review of RFAs, I have more fundamental disagreements with how the majority applies ORS 20.075 and arrives at the

---

[1] Petitioners are Friends of the Columbia Gorge, Northwest Environmental Defense Center, Oregon Natural Desert Association, Oregon Wild, Hood River Valley Residents Committee, Columbia Riverkeeper, Wildlands Defense, Greater Hells Canyon Council, and Oregon Coast Alliance.

awarded amount of fees. In large part, that is because the opinion provides little explanation of how the court reached its decision that petitioners should receive fees for 70 hours of work and offers only limited guidance for litigants and other Oregon courts on how the court (and, therefore, Oregon courts generally) should apply ORS 20.075. The majority's approach illustrates—and, thus, tacitly approves—an ad hoc, "I know it when I see it" conclusion about what constitutes a reasonable fee for partial success.

### FEES FOR RULEMAKING CHALLENGE BASED ON ORS 183.335(3)(d)

As the majority has explained, in accordance with petitioners' argument, we held that the council was required by ORS 183.335(3)(d) to provide a written statement of how it would determine whether the rule was accomplishing its objective, but the council failed to do that. *Friends of Columbia Gorge*, 365 Or at 388-89 (noting that "we agree with petitioners that the council never decided how it would track the success of the rules" and that "the statement must be in some storable and retrievable form, whether the statement is in a tangible written document or in some stored version of a writing").[2] The council took the position that it had satisfied the requirement in ORS 183.335(3)(d) through talking about how the council might track success of the rules at a council meeting; no writing was required. 365 Or at 387-88. However, that position was divorced from the text of the statute—like the position that the council took on the scope of judicial review. Petitioners, on the other hand, advanced a statutory construction argument that we accepted. We considered the related statutory provision in ORS 183.335(3)(e)(D) requiring a state agency to "maintain a record" of statements provided under paragraph (3)(d) as determinative context. 365 Or at 389. We also invalidated

---

[2] ORS 183.335(3)(d) provides:

"If requested by at least five persons before the earliest date that the rule could become effective after the agency gives notice pursuant to subsection (1) of this section, the agency shall provide a statement that identifies the objective of the rule and a statement of how the agency will subsequently determine whether the rule is in fact accomplishing that objective."

the council's new administrative rules based on that deficit. *Id.* at 390.

As it did based on petitioners' argument concerning the council's disregard of the scope of review under the Oregon Administrative Procedures Act for other than contested cases, the court should have awarded petitioners fees for their successful argument concerning the requirement set out in ORS 183.335(3)(d). That is because the council acted "without a reasonable basis in fact or in law" on *both* issues on which petitioners prevailed. *See* ORS 183.497(1)(b) (requiring a mandatory fee award).

As I see it, the rationale that the majority provides to distinguish the council's position on ORS 183.335(3)(d) from the council's position on its rule limiting the scope of judicial review is unpersuasive. The majority states that the council acted reasonably by arguing that it had substantially complied with ORS 183.335(3)(d) by talking about "potential options for tracking whether the rules were accomplishing their objectives." 367 Or at 262. But the council's initial position—that oral statements by agency representatives during a discussion constituted the "statement" of the means by which an agency will evaluate whether its rules meet the agency's objectives—is irreconcilable with the requirement in ORS 183.335(3)(d), as petitioners pointed out and as this court agreed in our opinion on the merits. The council's disregard of the statutory requirement in ORS 183.335(3)(d) is no less stark than its disregard of the statute providing for the scope of judicial review in other than contested cases, which the majority concludes was unreasonable.

Thus, this case is like *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 338 Or 433, 111 P3d 739 (2005), which I would follow here. In that case, the court decided an attorney fee dispute arising after the company, which provided relief pharmacists to work in pharmacies in Oregon, successfully challenged the department's assessment of unemployment taxes and interest in the Court of Appeals. In reversing the Court of Appeals, which denied the company's request for attorney fees, this court observed that the agency had not proffered an interpretation of the governing

statutes that would have permitted the agency to take its disputed action and, therefore, had acted without a reasonable basis in law. *Id.* at 446. Although the council in this case makes a "substantial compliance" argument, which the majority concludes "was not an unreasonable position for the council to advance" in this court, 367 Or at 262, the council took an unreasonable position regarding what ORS 183.335(3)(d) required. Like the agency in *Kaib's*, the council in this case failed to offer an interpretation of ORS 183.335(3)(d)—as opposed to a post-rulemaking explanation for its failure to provide a written statement—that would permit a court to understand the statute as allowing oral statements during a meeting to satisfy the requirement. Petitioners rightly sought this court's interpretation of the statutory requirement, and that interpretation will be of benefit to members of the public and other agencies participating in rulemaking in the future. Accordingly, in line with the holding and reasoning in *Kaib's*, I would conclude that petitioners are entitled to a mandatory fee award for their work on the statutory requirement in ORS 183.335(3)(d).

But even if the council could be said to have asserted a reasonable position, *in this court*, that it had substantially complied with the requirement for rulemaking contained in ORS 183.335(3)(d), the court also could have awarded fees for petitioners' work on the requirement of ORS 183.335 (3)(d) as a matter of discretion. Under ORS 183.497(1)(a), the court "[m]ay, in its discretion, allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner." Unlike the majority, I would award fees for petitioners' work related to what ORS 183.335(3)(d) requires of an agency during rulemaking, because the council took an unreasonable position by choosing to omit part of required rulemaking: Although the council recognized that it had to prepare a statement regarding how it would assess its new rules, it simply did not do it.

The majority explains its refusal to award discretionary fees, first by way of the factors in ORS 20.075(1). The majority emphasizes ORS 20.075(1)(b), stating that "the reasonableness of the agency's claims and defenses is

central" to an assessment of whether to award fees against the agency under ORS 183.497(1)(a), and it also notes ORS 20.075(1)(c) and (d), relating to the effects of a fee award on deterrence of good faith and meritless claims and defenses. 367 Or at 265. Although I agree with the majority that a court exercising its discretion and evaluating whether to award attorney fees against a state agency can and should take into account whether the agency took reasonable positions before it and whether a fee award will deter asserting good faith or meritless claims, courts must consider all the factors in ORS 20.075(1), regardless of whether the potentially liable party is a state agency. Although a court may consider certain factors not significant in a particular case, a court must initially consider all the factors in ORS 20.075(1)—regardless of whether a state agency is potentially liable for fees—because that statute provides that a court "shall" consider the listed factors "in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees."

The factors in ORS 20.075(1) are the following:

"(a)   The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b)   The objective reasonableness of the claims and defenses asserted by the parties.

"(c)   The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d)   The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e)   The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f)   The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g)   The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h)   Such other factors as the court may consider appropriate under the circumstances of the case."

Thus, those statutory factors cover more ground than an assessment of the plausibility of the council's arguments advanced in this court. The majority focuses on the council's contentions that it advanced in this court, but that leaves out the importance of the council's actions during rulemaking and petitioners' contributions to Oregon law.

Petitioners offer arguments on all the factors in ORS 20.075(1). In this case, the "conduct of the parties in the transactions or occurrences that gave rise to the litigation," ORS 20.075(1)(a), and the "objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings," ORS 20.075(1)(e), are significant. In that regard, the council took a shortcut during the rulemaking process by omitting a required statement and adopted a rule that was contrary to the Administrative Procedures Act. Further, even in this court, the council had little to offer in terms of statutory construction that would account for those actions. The conduct of the council in the transactions or occurrences that gave rise to the litigation was in part unreasonable and willfully so through its "persistence in pursuing an objectively unreasonable position *during* the litigation." *Ellison v. Dept. of Rev.*, 362 Or 148, 170, 404 P3d 933 (2017), *adh'd to as modified on recons*, 362 Or 527, 412 P3d 201 (2018) (emphasis in original). I further agree with petitioners regarding the objective reasonableness of their attempts to ensure that the council complied procedurally and substantively with administrative rulemaking requirements and that a fee award would have salutary effects by deterring unreasonable conduct by state agencies during rulemaking and encouraging the public to participate in rulemaking. As petitioners argue with respect to the factor in subsection (1)(d), a fee award "would encourage other agencies to comply with the applicable law in the future, would deter them from shirking their rulemaking duties under the APA, [and] would deter them from attempting to unlawfully restrict judicial review of their own decisions * * *." Thus, I would award some fees to petitioners for their

work on the requirement of ORS 183.335(3)(d) as a matter of discretion in light of those factors in ORS 20.075(1).

In addition to the emphasized factor in ORS 20.075 (1)(b), the majority quotes *McKean-Coffman v. Employment Div.*, 314 Or 645, 842 P2d 380 (1992), warning of the danger of awarding fees to an agency that has asserted a reasonable claim or defense, which could make agencies fearful of asserting legal positions about what the law is or should be. *See* 367 Or at 265. But the concern that this court expressed in *McKean-Coffman* should not drive the court's decision regarding discretionary fee awards in an administrative rulemaking case like this one, because the case at hand is unlike *McKean-Coffman*.

The underlying case leading to the disputed request for attorney fees in *McKean-Coffman* concerned whether, as provided by statute and in one of the agency's rules, the claimant was disqualified from receiving unemployment benefits because she had "received" retirement benefits, even though she promptly had rolled the retirement money into an IRA. The agency, thus, had earlier construed the statute and developed a rule in accordance with its understanding of the statute, and it applied that rule to the claimant. When the claimant prevailed on her contrary understanding of the statute, she sought attorney fees under ORS 183.497.

This court explained in *McKean-Coffman* that the underlying case involved a legitimate dispute about what the statute meant, and the agency reasonably had relied on "the plain meaning of the pivotal term, 'received[.]'" 314 Or at 649. It explained its decision to deny a discretionary award of fees this way:

> "The underlying controversy, while hard-fought, was nonetheless a common variety of administrative contest that involved reasonable positions on both sides and that required a significant amount of independent effort by this court to resolve. An award of attorney fees under such circumstances, while certainly encouraging to individual litigants such as petitioner, could have the undesirable effect of discouraging agencies from vigorously advocating reasonable policy positions in the courts."

*Id.* at 650-51.

The present case is different; it is no "common variety of administrative contest." In *McKean-Coffman*, the claimant challenged the application of an established agency rule based on the agency's understanding of the related statute. In this case, the council was developing new rules, and, as this court held, the council not only adopted a rule that was substantively countermanded by the judicial review process set out in the Administrative Procedures Act; it failed to follow all of the requirements of the rulemaking process that the legislature developed. The significance of that failure should not be underestimated.

In his seminal article, Dave Frohnmayer, a scholar of administrative law, described Oregon's procedures for agency rulemaking as "probably the most all-encompassing of any state." David B. Frohnmayer, *The Oregon Administrative Procedure Act: An Essay on State Administrative Rulemaking Procedure Reform*, 58 Or L Rev 411, 421 (1980). The purpose of the procedures prescribed in Oregon for agency rulemaking are to facilitate public participation in rulemaking. As the Court of Appeals said in its leading administrative law case about rulemaking,

> "[t]he policies of an agency in a democratic society must be subject to public scrutiny. Published standards are essential to inform the public. Further, they help assure public confidence that the agency acts by rules and not from whim or corrupt motivation. In addition, interested parties and the general public are entitled to be heard in the process of rule adoption under the Administrative Procedures Act."

*Sun Ray Dairy v. OLCC*, 16 Or App 63, 71, 517 P2d 289 (1973). Petitioners in this case not only had a view of what the new rules ought to look like that differed from the council's view, but petitioners also rightly sought to hold the council to its obligations during rulemaking and, therefore, to hold the council accountable to the general public. Because I would award fees to petitioners for their work on both arguments on which they prevailed, I would award a significantly larger amount of fees than the majority awards in this case.

## LODESTAR APPROACH

I also would hold expressly that Oregon courts should use the lodestar approach as the starting point for

determining the amount of a reasonable fee award in an administrative rulemaking case like this one. The majority uses the lodestar approach in its analysis of the amount of the fee award. *See* 367 Or at 266-67 (noting the lodestar approach and examining time and rates). This court, however, has never approved the general use of the lodestar approach. In *Strawn v. Farmers Ins. Co.*, 353 Or 210, 221 n 7, 297 P3d 439 (2013), the court observed that the lodestar approach is not "mandated" but is "potentially permissible" under ORS 20.075(2). The court explained the general lodestar approach (albeit in the context of a case involving a common fund recovery) as follows:

> "In determining what amount of fee is reasonable, two basic methods of calculation are generally available. One is the so-called 'lodestar' method, by which the attorney is awarded a fee based on a reasonable hourly rate, multiplied by a reasonable number of hours devoted to work on the case, with certain adjustments potentially made to that amount for factors such as the risk of loss and the quality of the attorney's work. *See* Conte & Newberg, 4 *Newberg on Class Actions* § 14:5 at 541-42."

353 Or at 217; *accord Moro v. State of Oregon*, 360 Or 467, 472, 384 P3d 504 (2016) (applying the lodestar approach to award attorney fees).

The parties in this case have accepted the lodestar approach in their briefing, and for good reason: The factors set out in ORS 20.075(2) for determining a reasonable amount of fees, standing on their own, are imprecise and, unlike the lodestar approach, do not create an anchoring point for determining an amount of fees. As one commentator has observed of the factors, "[b]ecause the factor method does not weigh or prioritize the factors, it does not give the judge an objective place to begin the fee analysis." Comment, Randall Paul Sutton, *The Lodestar Method: An Objective Solution to the Unreasonable Way in Which Reasonable Fees are Calculated in Oregon*, 29 Willamette L Rev 801, 811 (1993) ("*The Lodestar Method*"). This court should approve the lodestar method for statutory fee-shifting cases like this one, an approach that is commonly used and accepted in other jurisdictions.

## FEE AMOUNT

Petitioners argue why fees should be awarded for the work performed, addressing the factors in ORS 20.075. The majority does not address those individual factors and their arguments. Instead, the majority points to ORS 20.075(2)(a) as the most relevant statutory factor in determining the amount of the fee award. 367 Or at 274. That factor directs a court to consider the time and labor required in the proceeding, the novelty and difficulty of questions involved, and the skill needed to perform the legal work.

Although it is more time-consuming, this court should discuss how it is evaluating the factors in ORS 20.075 in a particular case and whether or how the factors apply in determining the fee award. This court expects lower courts to adhere to that model, even though it has fallen short in its own fee cases. *See, e.g.*, *Chalmers v. Oregon Auto. Ins. Co.*, 263 Or 449, 455-56, 502 P2d 1378 (1972) (noting factors for determining the amount of a reasonable fee award, citing *former* DR 2-106, but then focusing on the length of the briefing and summarily concluding that "$750 is a reasonable fee"). Indeed, the court's historical lack of focus on the legislatively mandated factors is remarkable. In *The Lodestar Method*, the author examined how Oregon courts "arbitrarily and inconsistently" applied the DR 2-106 factors. Sutton, 29 Willamette L Rev at 803. The author noted that Oregon courts did not employ a systematic analysis when considering the factors for determining a reasonable attorney fee, nor were there any Oregon cases that explain how the factors should be applied. *Id.* at 804. No cases since that comment was published over 25 years ago have attempted to flesh out the factors in any systematic way. This court's explicit consideration and application of the factors in ORS 20.075 as fee cases come before the court can provide litigants and other Oregon courts with practical guidance regarding the process of how to evaluate the ORS 20.075(2) factors.[3]

---

[3] The factors in ORS 20.075(2) are derived from factors in *former* DR 2-106, a disciplinary rule regarding reasonable attorney fees that was part of the ABA Model Code of Professional Conduct, which Oregon adopted in 1971. *See Dockins v. State Farm Ins. Co.*, 330 Or 1, 5-6 n 7, 997 P2d 859 (2000) (recognizing the factors were the same in the statute and the disciplinary rule); UTCR 5.080

Ultimately, the court lands on 70 hours as a reasonable amount of time spent in this case, relying on "other fee petitions recently filed in this court" and their "experience with appellate briefing and argument as judges and lawyers." 367 Or at 275. It is not clear to me what recent fee petitions form the reference point for the 70-hour determination, and, based on my experience, I disagree that 70 hours is a reasonable fee in this case. Even assuming that the majority correctly limits an award of fees to work performed to obtain the invalidation of the rules that pertain solely to the scope of judicial review, the majority insufficiently accounts for the time spent by petitioners' lawyers to accomplish that through the filing of a brief, appearing for and presenting oral argument, and presenting its request for attorney fees.

In regard to their petition for fees, as petitioners summarize it, their attorneys

> "have spent hundreds of hours litigating this appeal, including closely evaluating Respondents' rulemaking actions, researching and developing the claims for relief, preparing and filing the petition for review, reviewing and ensuring the completeness of the administrative record, fully briefing and arguing the merits of the appeal at the Supreme Court on an expedited timetable, monitoring Respondents' actions implementing the challenged rules during the pendency of the appeal, communicating with and providing legal advice to Petitioners' representatives, and preparing and filing this petition for attorney fees."

Petitioners also explain that the lead appellate attorney, Nathan Baker, managed the appeal so that there was not duplicative effort; that multiple lawyers were needed due to the statutorily expedited nature of the appeal; and that the petition only includes time since the challenged rules were adopted—not the administrative rulemaking process

---

(when adopted in the 1980s, the rule required attorneys to file a statement of attorney fees that included the substance of the factors that were in DR 2-106 and that are now in ORS 20.075). But as one attorney has pointed out, in the context of preventing professional discipline, the factors in DR 2-106(B) provided "somewhat contradictory assistance" given that "there is no method of determining in advance how a lawyer should interpret these factors and apply them in a particular matter." Jeffrey M. Smith, *Keep Your Career Intact*, 9 Barrister 4, 7 (1982).

time. Petitioners have also argued that the factors in ORS 20.075(2) justify the amount that they seek, and they have provided itemized billing records to justify the fees.

The council argues that it is not possible to understand from the submissions what claims each lawyer worked on and that petitioners should not be awarded any fees at all. I disagree that it is impossible to discern what the lawyers were working on at all, although I do agree that sometimes—or, in some instances, even much of the time— entries by an attorney lack enough information that would prompt me to award fees for the claimed time. An item that merely refers to time for "legal research" or to "prepare brief" or "email co-counsel" is insufficient.

However, petitioners' lawyers did provide time entries specifically describing some of their work, and the majority fails to specify how it picked 70 hours as the correct number of those hours of work submitted by those lawyers. In my view, a court should explain what time is being awarded when it is relevant, as it is in this case. *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 191, 957 P2d 1200 (1998), *adh'd to on remand*, 158 Or App 654, 976 P2d 566 (1999), *rev'd*, 334 Or 77, 46 P3d 721 (2002) (on reconsideration) (vacating order of Court of Appeals awarding fees and remanding for the court to identify relevant facts and legal criteria on which it relies for award that would enable "meaningful appellate review").

I would award the senior lead lawyer for the case, Gary Kahn, time for specific entries involving the preparation of the record, argument scheduling, brief preparation, and oral argument. For Nathan Baker, I would award time spent on preparing the petition for judicial review, including research about standing and jurisdiction; reviewing the administrative or judicial review record; drafting the statement of the case; correspondence with opposing counsel and the court; correcting the record; work on background and fee sections of the brief; work on preservation of errors section of brief; reviewing transcripts and recordings of meetings; work on any successful assignments of error; APA legislative history research and APA procedural requirements; editing of briefs; preparation of excerpt of record and appendix;

preparation of reply brief; attending oral argument; review of the court's opinion; and preparing the fee petition. Based on the amount of nonspecific time descriptions, Baker would be entitled to an award on no more than 40% of the time he has listed.

For Steve McCoy, I would award fees for all time spent regarding APA legislative history. That amounts, however, to a very small slice of what he billed.

Peter Lacy's declaration is relatively detailed compared to other declarations submitted in this case. I would award fees for time spent considering the legal issues to be raised and whether his client would be joining the litigation; work on opening/reply briefs; preparation for moot arguments; attending oral argument; communication with the court; review of the opinion and communication with his client regarding the same; and preparing his part of fee petition. That amounts to approximately half of his requested time.

Peter Broderick also prepared a relatively detailed declaration supporting his portion of the work. He primarily worked on the successful third assignment of error regarding the scope of judicial review. But he also researched ORS 183.335, helped prepare other parts of briefs, helped with moot argument, and prepared his part of the fee petition. I would award fees for all that work.

Bryan Telegin claims fees for work on the briefs and the fee petition. I would award fees for that work.

Finally, David Becker provided expert testimony regarding the fees in the case and assisted counsel in preparing for oral argument. I would award all his fees except for time for attendance at oral argument. The majority provides no rationale for why it provides no fees for any time Becker spent to establish the reasonableness of the rates claimed by the lawyers in the case.

As that summary reflects, I would find that petitioners' attorneys had to spend considerably more than 70 hours of time just to bring their contention that the council improperly had limited the scope of judicial review by rule to this court. But, as noted earlier, I disagree that that

is the sole part of their case for which petitioners are entitled to an award of fees.

In conclusion, the majority has misapplied ORS 183.497(1) by concluding that petitioners are not entitled to a mandatory fee award for their work on the issue that led to the invalidation of the council's new rules and by promoting a unique emphasis on one factor in ORS 20.175(1)—an emphasis that does not inhere in the statutory scheme—to conclude that petitioners should not be awarded fees on a discretionary basis. In my view, the majority's approach to the fee petition in this case engenders unpredictable outcomes, and that kind of unpredictability will tend to prolong litigation about attorney fees and may depress the availability of counsel to take cases in which the legislature has decided that it is important to permit awards of attorney fees to successful parties.

I respectfully dissent.

Nelson, J., joins in this dissent.